UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
CHANTELLE HARRIS,

                              Plaintiff,

       -against-

JAMAICA AUTO REPAIR INC., et al.,

                              Defendants.
----------------------------------------------------------------x

**MEMORANDUM AND ORDER**

**03-CV-0417 (RLM)**

**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

Currently pending before this Court is a motion by defendant Dependable Credit Corp. ("defendant" or "Dependable") for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, seeking dismissal of portions of the complaint of plaintiff Chantelle Harris ("plaintiff"). For the reasons set forth below, the Court grants in part and denies in part defendant's motion for summary judgment.

## FACTUAL BACKGROUND

The following facts are undisputed on this motion. On March 14, 2001, Jamaica Auto Repair, Inc. ("Jamaica"), a dealer of new and used automobiles, purchased a 1993 Toyota Camry ("the Vehicle") for $6,275.00 through an auction located in Pennsylvania. See Statement by Defendant Pursuant to Local Rule 56.1 ("Def. 56.1") at ¶ 11; Answer of Defendant Jamaica Auto Repair, Inc. at ¶ 6. At that time, the seller of the Vehicle certified that the Vehicle's actual mileage was 67,428. See Def. 56.1 at ¶ 12. Just over a week later, on or about March 23, 2001, Jamaica sold the Vehicle to plaintiff for $8,869.59, at which

point the Vehicle's odometer read 67,515 miles.  See id. at ¶¶ 2-3, 13; Reply Memorandum of Law of Defendant Dependable Credit Corp. in Further Support of Motion for Summary Judgment ("Def. Reply") at 4 n.2.[1]  To complete the purchase, plaintiff obtained a $4,107.01 loan from Dependable, see Def. 56.1 at ¶ 3, and executed a retail installment contract with Jamaica.  See Declaration of Jeffrey Cooper ("Def. Decl.") at Exh. A.  Jamaica's interest in the retail installment contract was simultaneously assigned to Dependable, who was thereby entitled to receive monthly loan payments from plaintiff.  See Def. 56.1 at ¶¶ 4-5.  Plaintiff has made all of the required loan payments and now owns the Vehicle outright.  See id. at ¶ 7.

**PROCEDURAL HISTORY**[2]

On January 27, 2003, plaintiff, who was then represented by counsel but is now proceeding *pro se*, commenced this action alleging, *inter alia*, that Jamaica altered the odometer on the Vehicle and/or misrepresented the Vehicle's mileage with the intent to defraud her.  See Complaint ("Compl.") at ¶ 1.  The complaint seeks to hold Jamaica liable for this alleged odometer-related conduct pursuant to the Motor Vehicle Information and Cost Saving Act, 49 U.S.C. § 32701 *et seq.* (2000) ("the Federal Odometer Act"), New York General Business Law § 392-e (McKinney 1996 & Supp. 2005) ("the State Odometer Act"), and New York General Business Law § 349 (McKinney 2004) ("the State Deceptive Practices Act" or

---

[1] As it acknowledges in its reply (see Def. Reply at 4 n.2), defendant's Rule 56.1 Statement erroneously stated that the Vehicle's mileage was 67,715.  See Def. 56.1 at ¶ 13.

[2] The procedural history has been significantly condensed and does not reflect the numerous delays and adjournments with which this case has been plagued.

"Section 349"), as well as under theories of common law fraud, fraudulent misrepresentation, and breach of contract. See Compl at ¶¶ 5-40.

In addition to asserting the aforesaid odometer claims, plaintiff's complaint includes two additional causes of action: it alleges that Jamaica failed to provide a warranty certifying the Vehicle's serviceability or, alternatively, that it negligently so certified the Vehicle, in violation of New York Vehicle and Traffic Law § 417 (McKinney 1996) ("Section 417"), see Compl. at ¶¶ 45-49; and that Jamaica forged plaintiff's signature on registration documents, misrepresented the actual year of the Vehicle, and registered the Vehicle with the State of New York under a different vehicle identification number, all in violation of the State Deceptive Practices Act, see Compl. at ¶¶ 19-22.

While the complaint centers around Jamaica's alleged misconduct, plaintiff seeks to hold Dependable jointly liable with Jamaica on the basis that, as the assignee of the retail installment contract, Dependable is subject to all claims plaintiff could assert against Jamaica related to the sale of the Vehicle. See id. at ¶¶ 50-53. Defendant has conceded that, by virtue of the assignment, it "steps into the shoes of the dealer" with respect to plaintiff's claims. Transcript of Oral Argument on 7/7/05 ("7/7/05 Tr.") at 7.

On May 8, 2003, the Court conducted an initial conference, at which the parties consented to have the undersigned magistrate judge handle the case for all purposes, including entry of judgment. The Court set a discovery schedule and sent the case for court-annexed arbitration. Prior to the arbitration hearing, plaintiff's attorney made an application to

withdraw as her counsel, which application was granted on October 16, 2003. Since that time, plaintiff has proceeded *pro se*.

Following an evidentiary hearing, an arbitration award was entered on January 5, 2005, after which Jamaica and Dependable requested a trial de novo. Thereafter, upon learning that Jamaica no longer intended to defend the action, the Court granted defense counsel's application to withdraw as Jamaica's attorney. Jamaica has ceased defending this action. See 7/7/05 Tr. at 4. On May 10, 2005, Dependable was granted permission to file the instant motion for summary judgment. Following briefing by Dependable and plaintiff, the Court heard oral argument on the motion on July 7, 2005.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment may be granted only where the pleadings and evidence in the record "demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see Fed. R. Civ. P. 56(c). Where, as here, summary judgment is sought against the party that will bear the ultimate burden at trial, the movant's burden on the motion "will be satisfied if [it] can point to an absence of evidence to support an essential element of the nonmoving party's claim." Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995); see Celotex, 477 U.S. at 323 ("The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."); Nora Beverages, Inc. v. Perrier Group of Am., Inc., 164 F.3d 736, 742 (2d Cir.

1998). Once the moving party has made the requisite showing, the non-moving party "may not rest upon the mere allegations or denials of [her] pleading, but [her] response . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (citations omitted). Nevertheless, in ruling on a motion for summary judgment, the Court must resolve all ambiguities and draw all factual inferences in favor of the party against whom summary judgment is sought. See id. at 255. Summary judgment "is properly granted only when no rational finder of fact could find in favor of the non-moving party." Carlton v. Mystic Transp. Inc., 202 F.3d 129, 134 (2d Cir. 2000).

## II. Defendant's Motion

Defendant seeks summary judgment on the following claims: (1) those relating to the allegation that Jamaica altered the Vehicle's odometer; (2) those relating to the allegation that Jamaica misrepresented the Vehicle's mileage; and (3) that aspect of plaintiff's Section 417 claim that alleges that Jamaica failed to provide plaintiff with a warranty of serviceability.[3] For the reasons set forth below, defendant's motion is granted with respect to the odometer-

---

[3] Although described as a motion seeking "summary judgment dismissing the Complaint," Notice of Motion at 1; see also Def. Decl. at ¶ 16, defendant's motion fails to address either those aspects of plaintiff's Section 349 claim that do not relate to the alleged odometer rollback, or plaintiff's claim under Section 417 that the Vehicle was falsely or negligently certified as serviceable. Therefore, the motion is in fact one for *partial* summary judgment.

tampering allegations, denied with respect to the mileage misrepresentation allegations, and granted with respect to the challenged allegation under Section 417.[4]

### A. *Odometer Tampering Allegations*

This Court agrees with defendant that plaintiff has failed to raise a genuine issue of material fact regarding her allegations that Jamaica altered or caused to be altered the odometer reading on the Vehicle. It is undisputed on this motion that when Jamaica purchased the Vehicle through an auction, the odometer read 67,428 miles, and that less than two week later, when Jamaica sold the Vehicle to plaintiff, the odometer read 67,515 miles – an increase of 87 miles. Plaintiff has submitted no evidence, admissible or otherwise, on which a trier of fact could reasonably conclude that, during the brief period that the Vehicle was in its possession, Jamaica rolled back or otherwise tampered with the odometer. Therefore, summary judgment in defendant's favor is warranted with respect to plaintiff's allegations that Jamaica altered the Vehicle's odometer.

### B. *Allegations of Misrepresentation of Mileage*

Defendant argues that summary judgment on the mileage misrepresentation allegations is warranted because plaintiff has failed to present any evidence of Jamaica's intent to defraud plaintiff, which, it maintains, is an essential element of each of plaintiff's mileage

---

[4] Defendant's reply additionally argues that summary judgment should be granted in its favor because plaintiff failed to controvert any of the facts in defendant's Rule 56.1 Statement. See Def. Reply at 3. However, even if all the facts contained in defendant's Rule 56.1 Statement are deemed to be admitted, defendant nevertheless is not entitled to judgment as a matter of law on all of plaintiff's claims.

misrepresentation theories of liability.[5] In discussing the fraudulent intent requirement, defendant does not distinguish between plaintiff's various theories of liability, but instead focuses on the showing required to prove intent to defraud within the meaning of the Federal Odometer Act. Therefore, this Court will similarly focus on the Federal Odometer Act.[6]

To prove that a seller of a vehicle violated the Federal Odometer Act by providing the buyer with an inaccurate odometer reading, the plaintiff must establish that the defendant acted with an intent to defraud. See Ringenback v. Crabtree Cadillac-Oldsmobile, Inc., 99 F.Supp.2d 199, 205 (D. Conn. 2000). Nevertheless, in the majority of jurisdictions that have considered this issue, the plaintiff need not provide proof of a car dealer's actual knowledge of an inaccurate odometer reading in order to demonstrate intent to defraud. See Daluz v. Acme

---

[5] Although not discussed in defendant's motion papers, each of plaintiff's odometer-related claims assumes that the mileage certified to her by Jamaica (i.e., 67,515 miles) was inaccurate. Plaintiff's papers in opposition to defendant's summary judgment motion relied on a hearsay (Carfax) report and did not include any admissible evidence that the odometer reading of 67,515 was inaccurate. However, in response to subpoenas issued by the Court at plaintiff's request, admissible evidence was produced showing an odometer reading of 109,876 miles during an inspection of the Vehicle in 1998, three years prior to plaintiff's purchase of the Vehicle. See Affidavit Regarding Certain Business Records of Somerset Tire Service, Inc. at Exhs. A & B.

[6] The Federal Odometer Act was originally enacted in 1972 and codified at 15 U.S.C. §§ 1981-1991. It was later recodified in 1994 at 49 U.S.C. §§ 32701-32711. Although the recodification was accompanied by some language changes, Congress did not intend to substantively change the law. See Act of July 5, 1994, Pub. L. No. 103-272, 108 Stat. 745; Suiter v. Mitchell Motor Coach Sales, Inc., 151 F.3d 1275, 1277 n.1 (10th Cir. 1998). Subsequent amendments to the mileage disclosure requirements in 1996 were also not intended to make substantive changes. See Act of October 11, 1996, Pub. L. No. 104-287, § 5 (62), 110 Stat. 3388, 3394; Suiter, 151 F.3d at 1277 n.1. As such, cases analyzing the meaning of intent to defraud under former 15 U.S.C. §§ 1981-1991 are equally applicable to the current version of the Federal Odometer Act.

Auto Body & Sales, Inc., 814 F.Supp. 242, 244 (D. Conn. 1992) ("A plaintiff need not show actual knowledge to prove intent to defraud under the [Federal Odometer Act]."); Auto Sport Motors, Inc. v. Bruno Auto Dealers, Inc., 721 F.Supp. 63, 65-66 (S.D.N.Y. 1989) ("[A] dealer of used cars may be held liable in the absence of actual knowledge . . . that the odometer reading was incorrect."); see also Suiter, 151 F.3d at 1282 (10th Cir. 1998) ("[A] transferor need not have actual knowledge that the odometer statement was false before liability may be imposed."); Tusa v. Omaha Auto Auction Inc., 712 F.2d 1248, 1254 (8th Cir. 1983) (upholding district court's finding of intent to defraud under Federal Odometer Act despite district court's acknowledgment that dealer had no actual knowledge that odometer reading was incorrect); Ryan v. Edwards, 592 F.2d 756, 762 (4th Cir. 1979) ("Constructive knowledge, recklessness, or even gross negligence in determining and disclosing the actual mileage traveled by a vehicle have been held sufficient to support a finding of intent to defraud under the statute."); Nieto v. Pence, 578 F.2d 640, 642 (5th Cir. 1978) (liability may be imposed when "a transferor reasonably should have known that a vehicle's odometer reading was incorrect . . . ."); Ralbovsky v. Lamphere, 731 F.Supp. 79, 82 (N.D.N.Y. 1990) (collecting cases and noting that the "majority view is that a seller of a used car reporting that the mileage shown on the odometer is true may be held liable in the absence of actual knowledge that an odometer reading is false if he reasonably should have known that the odometer reading was incorrect."). As courts in this and other circuits have concluded, a dealer's fraudulent intent may be inferred if the dealer's statements as to a used vehicle's mileage are "made recklessly or carelessly, without knowledge of their truth or falsity, or without reasonable grounds for

belief in their truth." Daluz, 814 F.Supp. at 244 (quoting Jones v. Fenton Ford, Inc., 427 F.Supp. 1328, 1334) (D. Conn. 1977)); see also Auto Sport Motors, 721 F.Supp. 63, 65-66 (intent to defraud under the Federal Odometer Act may be found on evidence that a defendant "reasonably should have known that the odometer reading was incorrect."). Under this standard, a dealer "may not consciously avoid learning that the true mileage of a vehicle is not as it appears on the odometer." Id. at 66. Instead, where "[f]actual circumstances . . . would alert a seller to the probable inaccuracy of the odometer reading[, there arises] . . . a duty of further investigation." Id.; see also Suiter, 151 F.3d at 1284 ("[D]ealers have an affirmative duty to discover odometer defects."). In such circumstances, this duty is not discharged where a retailer certifies a vehicle's mileage solely in reliance "on the odometer reading and the assertions of the previous owner." Id. at 1284.[7]

Among the factual circumstances that courts have considered in determining whether a dealer was grossly negligent or reckless in certifying a vehicle's mileage are the following: the dealer's experience in used car sales, and the vehicle's unreasonably low mileage in light of its age and/or its interior, exterior or mechanical condition. See Daluz, 814 F.Supp. at 244

---

[7] In its reply papers, defendant cites two cases decided under the Federal Odometer Act's predecessor statute—Jones v. Hanley Dawson Cadillac Co., 848 F.2d 803 (7th Cir. 1988), and Birdwell v. Hartsville Motors, Inc., 404 F.Supp. 625 (M.D. Tenn. 1975). See Def. Reply at 4, 6. This Court agrees that the federal statute requires an "intent to defraud," Birdwell, 404 F.Supp. at 629, and that "mere negligence cannot be the basis for civil liability under the Odometer Act
. . . ." Jones, 848 F.2d at 808. Nevertheless, the holdings of those two cases do not warrant entry of judgment in defendant's favor on this motion. Although the courts in Jones and Birdwell entered judgments in favor of the defendant dealers, they did so following full trials on the merits of the plaintiffs' claims, and not on motions for summary judgment.

(denying cross-motions for summary judgment where material issues of fact existed as to whether, *inter alia*, "the condition of the car was typical of similar cars with approximately 70,000 miles on them . . . ."); Auto Sport Motors, 721 F.Supp. at 66 nn.5, 6; see also Suiter, 151 F.3d at 1284 (district court properly denied defendant's motion for judgment as a matter of law where plaintiff submitted evidence that the vehicle's "general mechanical condition was not consistent with the mileage recorded on the odometer" and that the "general wear and tear of the [vehicle] indicated it had traveled more miles than the odometer indicated.").

Here, there exists a material issue of fact as to whether the odometer reading on the Vehicle at the time it was sold to plaintiff was consistent with its age and condition and, if not, whether Jamaica recklessly disregarded indicia of a potential odometer rollback when it disclosed the Vehicle's mileage as 67,515. Plaintiff has provided evidence, in the form of repair estimates and bills, as well as her own sworn statements, from which a reasonable juror could conclude that, virtually from the time of delivery, the Vehicle suffered from a number of mechanical problems requiring a series of repairs. See, e.g., 3/27/01 Pep Boys Invoice; 3/28/01 Jamaica Repair Order, attached as Exh. 1 to Plaintiff's Opposing Motion For Summary Judgment [sic] ("Pl. Opposition"); 9/17/01 LMC Invoice; Pl. Opposition at ¶¶ 4-6.[8] Assuming the truth of this evidence for purposes of the instant motion, it appears that, within four days of its purchase, the Vehicle had to be brought to a Pep Boys shop for diagnostic testing, which revealed the need for more than $1,000 worth of repairs. See 3/27/01 Pep Boys

---

[8] Plaintiff's opposition to defendant's motion for summary judgment was not submitted in the form of an affidavit or otherwise sworn to. However, at oral argument on defendant's motion, plaintiff was placed under oath and swore to the truth of the statements made in her opposing papers. See 7/7/05 Tr. at 50-51.

Invoice. The following day, plaintiff brought the Vehicle back to Jamaica, which performed some of the suggested repairs free of cost. See 3/28/01 Jamaica Repair Order. However, over the next year, the Vehicle was beset by a variety of problems requiring repairs, including replacement of the transmission. See, e.g., 1/10/02 ACE Auto Repairs & Transmission Customer Invoice. Viewing this evidence in the light most favorable to plaintiff, a reasonable juror could conclude that the Vehicle's condition at the time of purchase was inconsistent with that of a car that had traveled 67,515 miles and that Jamaica was, therefore, reckless in certifying the Vehicle's mileage and in expressly representing that "[t]he odometer has not been serviced, repaired or replaced." Bill of Sale (Compl. at Exh. B). Accord Daluz, 814 F.Supp. at 244 (denying defendant's motion for summary judgment where defendant had not submitted evidence showing, *inter alia*, "that the condition of the car corresponded to the mileage reported . . . ."). Accordingly, defendant's motion for summary judgment on plaintiff's odometer-disclosure allegations is denied.

### C. *Section 417 Claims*

In an argument relegated to a footnote in its motion papers, defendant also seeks summary judgment on plaintiff's claim that Jamaica violated Section 417 by failing to furnish her with a warranty of serviceability. See Def. Decl. at ¶ 9 n.3; see also Def. Reply at 6. Section 417 requires any retailer of secondhand vehicles to deliver to the purchaser of such a vehicle a written notice containing "a certification that said motor vehicle complies with such requirements . . . as shall be specified by the commissioner [of Motor Vehicles] and that it is in condition and repair to render, under normal use, satisfactory and adequate service upon the public highway at the time of delivery." N.Y. Veh. & Traf. Law § 417. The statement must

be printed on the face of the standard bill of sale in at least 10-point type.  See N. Y. Comp. Codes R. & Regs. tit. 15, § 78.13(b)(2).  Section 417 creates a warranty of serviceability that cannot be waived.  See Rayhn v. Martin Nemer Volkswagen Corp., 434 N.Y.S.2d 775, 777 (3d Dep't 1980); Armstrong v. Boyce, 513 N.Y.S.2d 613, 615 (Jefferson Cty City Ct. 1987) (collecting cases).  It is a violation of Section 417 to fail to deliver the requisite certification, or to deliver a false certificate knowing it to be false or misleading, or to fail to make "an appropriate inspection to determine whether the contents of such certificate are true . . . ."  N.Y. Veh. & Traf. Law § 417; see also Rayhn, 434 N.Y.S.2d at 777; Barilla v. Gunn Buick-Cadillac-GMC, Inc., 528 N.Y.S.2d 273, 279 (Oswego Cty City Ct. 1988).

Plaintiff's complaint sets forth several alternative theories in support of her Section 417 claim.[9]  First, she alleges that, "upon information and belief, Jamaica failed to give the Plaintiff the certificate required by" Section 417.  See Compl. at ¶ 46.  Alternatively, she alleges that "Jamaica failed to perform the proper inspection required by section 417 and, to the extent that a certificate was given, it was wrongly and negligently certified."  Compl. at ¶ 48.

While defendant's answer categorically denies all of the allegations under the breach of warranty claim, see Answer of Dependable Credit Corp. at ¶¶ 46-49, its motion for summary judgment cursorily addresses only the first of plaintiff's Section 417 theories of liability, which claims that Jamaica failed to provide plaintiff with the warranty of serviceability.  Plaintiff's

---

[9]  Although the breach of warranty of serviceability claim is labeled "Tenth Claim," it is in fact the eighth claim in plaintiff's complaint.  See Compl. ¶¶ 45-49.

alternative theories of liability under Section 417 are not the subject of defendant's motion and thus remain in the case.

Defendant correctly asserts that the certificate required by Section 417 "is included in the Bill of Sale provided to plaintiff by [Jamaica], which plaintiff signed and has attached to her Complaint." Def. Decl. at ¶ 9 n.3. Although plaintiff may not have recognized that the Bill of Sale attached to her complaint contains the requisite certificate, see Compl. at Exh. B, plaintiff has acknowledged that the document bears her signature, see 4/7/05 Transcript of Final Pretrial Conference at 39-40, and it does in fact contain the certification required by Section 417. As such, defendant is entitled to summary judgment on that aspect of plaintiff's Section 417 claim that rests on Jamaica's alleged failure to deliver the warranty of serviceability.

## CONCLUSION

For the reasons discussed above, defendant's motion for summary judgment is denied with respect to plaintiff's mileage misrepresentation allegations, and granted with respect to plaintiff's odometer-tampering allegations and plaintiff's allegation that Jamaica failed to provide a Section 417 certification.

The Clerk is directed to docket this Memorandum and Order via ECF and to mail a copy to plaintiff at the following address: 34-34 24th Street, Apt. 6H, Long Island City, NY 11106.

**SO ORDERED.**

**Dated:** **Brooklyn, New York**

**August 1, 2005**

                                          **/s/**
                                          **ROANNE L. MANN**
                                          **UNITED STATES MAGISTRATE JUDGE**